IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 20, 2010 Session

**TY AMANNS, ET AL. v. JEFF GRISSOM, ET AL.**

**Appeal from the Circuit Court for Knox County**
**No. 1-652-04      Dale C. Workman, Judge**

_____

**No. E2009-00802-COA-R3-CV - FILED JUNE 30, 2010**

_____

This suit was filed in Circuit Court after first being filed and then voluntarily non-suited in Chancery Court. After multiple discovery abuses, the Trial Court entered an order pursuant to Tenn. R. Civ. P. 37 dismissing the plaintiffs' suit. Plaintiffs appeal to this Court. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed;**
**Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and JOHN W. MCCLARTY, J., joined.

Darren V. Berg, Martin L. Ellis, and Steven B. Johnson, Knoxville, Tennessee, for the appellants, Ty Amanns and Kim Amanns.

Linda J. Hamilton Mowles, and Jimmy D. Holbrook, Jr., Knoxville, Tennessee, for the appellees, Jeff Grissom, and Grissom Heat & Air, Inc.

John M. Neal, Knoxville, Tennessee, for the appellees, Jon Pence, and East Tennessee Gas Products, Inc.

# OPINION

## Background

In November of 1997, Ty Amanns and Kim Amanns ("Plaintiffs") sued Jeff Grissom ("Grissom") and Grissom Heat & Air, Inc. ("Grissom Heat & Air") in the Chancery Court for Knox County ("Chancery Court") concerning the installation of a humidity control unit in an indoor swimming pool room. At some point in time, Plaintiffs added Jon Pence ("Pence") and East Tennessee Gas Products, Inc. ("East TN Gas") as additional defendants in that suit.

In response to interrogatories propounded to Plaintiffs in the Chancery Court suit, Plaintiffs produced several pages of photographs purporting to depict mold, among other things. Several of these photographs appear to depict walls and window ledges, and two of the photographs purport to depict mold on furniture. One of the photographs purports to depict mold on a lampshade. In late April or early May of 2001, Plaintiffs filed a response to interrogatories and requests for production propounded to them by Pence and East TN Gas stating, in pertinent part:

5. Please itemize all economic losses which the Plaintiffs claim to have suffered as a result of the wrongful acts of any of the Defendants. Please produce copies of all documents in the possession or under the control of the Plaintiffs which document such losses.

RESPONSE:

* * *

5.17 Loss of furniture, fixtures, appliances, equipment, clothing and other personal effects – unknown at this time.

* * *

9. Please state the date of each alleged failure of the equipment which is involved in this lawsuit and produce any documentation in the possession or under the control of the Plaintiffs which would demonstrate the existence of such failures.

RESPONSE: The de-humidification system failed for the purposes for which it was intended to operate from the date of its startup on June 7, 1997

-2-

and continuously thereafter due to the erroneous and wrongful calculations made by the Defendants Grissom and Pence for the sizing of the de-humidification unit that would be required to service the pool area within the ranges requested by the Plaintiffs. Plaintiffs' responses to Interrogatories Nos. 2, 4, 5, 6, and 7 are adopted and incorporated herein by reference. Additionally, there are photographs showing fungi and mold that can be viewed and/or copied at Defendants' discretion at the offices of Plaintiffs' counsel.

Plaintiffs voluntarily non-suited the Chancery Court suit in November of 2003.

In October of 2004, Plaintiffs sued Grissom, Grissom Heat & Air, Pence, East TN Gas, and Dryline Systems, Inc. ("collectively Defendants") in the Circuit Court for Knox County ("Trial Court"). Plaintiffs' Circuit Court complaint contained an ad damnum clause of $1,500,000.00 in compensatory damages and $500,000.00 in punitive damages. It is this suit now before us on appeal.

During the many years that Plaintiffs' claims have been pending, first in Chancery Court and then in Circuit Court, Plaintiffs have been represented by several different attorneys. Trial dates have been set and then continued on more than one occasion. In May of 2008, Plaintiffs' counsel at that time was granted leave to withdraw as attorney of record for Plaintiffs. At that time, trial was set for July of 2008. Plaintiffs' current counsel filed a Notice of Appearance on June 9, 2008. On June 20, 2008 Plaintiffs filed a motion seeking to increase the ad damnum in their complaint to four million dollars due to alleged medical problems caused by alleged exposure to mold.

During discovery, Defendants sought to depose Helen Lilly, Kim Amanns' grandmother. On August 21, 2007 Plaintiffs filed a motion to quash the subpoena alleging that Ms. Lilly was unable to be deposed as she "is 91 years of age, in failing health and is believed to suffer from mild dementia." Defendants later discovered that the real property at issue in the subject suit was deeded to Kim Amanns by Ms. Lilly, but was not deeded to Ty Amanns. Pence and East TN Gas moved to strike the claims of Ty Amanns with regard to alleged damages to the house.

In July of 2008, Ms. Lilly executed a Correction Warranty Deed which states, in pertinent part:

THIS CONVEYANCE IS BEING MADE FOR THE PURPOSE OF ADDING THE NAME OF TY AMANNS, HUSBAND OF KIMBERLY S. AMANNS, AS A GRANTEE WHICH NAME WAS ERRONEOUSLY

OMITTED IN THE WARRANTY DEED DATED 4 JANUARY 1995, OF RECORD IN BOOK 1168, PAGE 789, IN THE REGISTER'S OFFICE FOR ANDERSON COUNTY, TENNESSEE. IT IS THE INTENT OF THIS CONVEYANCE TO RELATE BACK AND TAKE AFFECT [sic] FROM THE DATE OF THE ORIGINAL DEED DATED 4 JANUARY 1995.

Pence and East TN Gas then sought an order requiring Ms. Lilly to submit to a mental examination to determine her capacity to execute legal documents.

After a hearing, the Trial Court entered an order, *inter alia*, granting Defendants permission to take the deposition of Ms. Lilly and ordering Plaintiffs to provide Defendants with copies of Ms. Lilly's medical records before her deposition. During Ms. Lilly's deposition, Ms. Lilly was asked specifically whether she suffered from any form of dementia or whether she ever had been diagnosed with dementia, and she answered in the negative. It is clear from reading her deposition testimony that Ms. Lilly does not, and never has, suffered from dementia.

On July 25, 2008 the Trial Court held a hearing on several pending motions including a motion to exclude Plaintiffs' expert Dr. Johanning. During the hearing, the Trial Court ruled that it would hold a Tenn. R. Evid. Rule 705 hearing prior to allowing Dr. Johanning to testify before the jury in order to determine if Dr. Johanning was qualified to testify. As soon as the Trial Court made this oral ruling, Plaintiffs orally moved to continue the trial set to begin within the next week. The Trial Court granted the request to continue but specifically stated: "We won't start all over again." Plaintiffs' counsel assured the Trial Court:

No, Your Honor, we'll go with the experts we've listed, we'll go with the experts that have been discovered. You know, in the unlikely event something happens and additional diagnostic tests are needed - - …. You know what I mean. I mean, we'd have to clean that up. We're not going to go with a new array of witnesses.

Trial was re-set for April of 2009.

Despite the Trial Court's clear direction and Plaintiffs' counsel's statement in response to the Trial Court's direction at the July 25, 2008 hearing, on September 2, 2008 Plaintiffs filed a supplemental witness list and a supplemental Rule 26 disclosure listing not one, but ten new expert witnesses. Defendants moved the Trial Court to exclude Plaintiffs' new experts. The Trial Court held a hearing and entered an order on September 26, 2008 excluding all ten of Plaintiffs' newly disclosed experts and reiterating that "Plaintiffs shall

be limited to the experts which had been disclosed prior to Plaintiffs' oral Motion for Continuance on July 25, 2008."

On October 31, 2008 Plaintiffs filed a response to interrogatories propounded by Pence and East TN Gas. Plaintiffs responded to interrogatory number 4 of the Pence and East TN Gas interrogatories ("Interrogatory 4") stating, in pertinent part:

4. Please itemize the $46,202 in personalty which plaintiffs claim to have lost as a result of alleged moisture and mold damage to their home. Please state the manner by which the value was calculated. Please produce every piece of documentary evidence including, but not limited to, sales tickets, invoices, charge receipts and checks which demonstrate how much plaintiffs paid for the personalty. Please produce copies of all receipts, checks and charges, together with every other piece of documentation in plaintiffs' possession which demonstrates how much plaintiffs paid for the replacements to the allegedly lost personalty.

RESPONSE: See partial list attached as Exhibit 4 totaling $66,670.06 for furniture only. This figure does not include televisions, computers, printer, Sony stereo and Bose speakers. The value of this category is estimated at $15,000.00. Please note that all receipts, checks or any other paper documentation that were present in the subject home at the time we vacated the premises which would document the cost of the various items contained within the home, were destroyed as they had been contaminated by the mold in the home. It is impossible to estimate the true value of all items of personalty in the home that were discarded. These items would include numerous small items including all bedding, all bath and kitchen towels, all food items, various cooking and eating utensils and all photographs.

On October 31, 2008, Pence and East TN Gas filed a motion to compel discovery which provided, in pertinent part:

Interrogatory number 4 addresses the allegedly lost personal property. Plaintiffs' response says they are seeking $66,670.06 for furniture alone,

together with lost televisions, computers, printers, etc. in the amount of $15,000. The Plaintiffs say that every shred of documentation which would show what was actually in the house before the loss has been destroyed, so that it is already impossible for the Defendants to verify what was actually removed from the house. At the same time, Plaintiffs have failed to provide the itemized receipts demonstrating what they purchased from Ethan Allen. They have simply provided a number of billing invoices that reflect totals of the purchases. Copies are attached for the Court's information. Without more detailed information, it is impossible for the Defendants to determine what property was actually lost, or to determine whether the furniture purchased by Plaintiffs was actually placed in their double-wide. The Defendants therefore move the Court for an Order compelling Plaintiffs to produce clean, unredacted copies of all of the documents produced in their discovery responses, and also ordering Plaintiffs to itemize the property purchased at Ethan Allen, and to produce each receipt for each item of furniture.

In November of 2008, Pence and East TN Gas filed a Motion for Sanctions Arising From Spoliation of Evidence alleging that "Plaintiffs have, however, intentionally destroyed all evidence that would allow Defendants to determine the nature and value of the personal property supposedly damaged." On December 4, 2008, Plaintiffs filed a response to the motion for sanctions arising from spoliation along with an affidavit of Ty Amanns, which stated, in pertinent part:

4. My wife, Kim Amanns, and I have never intentionally destroyed or permitted the destruction of evidence in connection with this or the previous litigations filed on our behalf involving exposure to mold. Prior to vacating our home we disposed of only furnishings and personalty which had visibly been contaminated with mold. On or after June 2000 and after vacating our home we disposed of furnishings and personalty which we believed had been contaminated by mold because of the symptomotology we were experiencing in an attempt to alleviate or lessen these symptoms. We vacated the premises and have not lived in the home since that time for this same reason.

5. In replacing any and all such furnishings and personalty which had been disposed of, we always attempted replacement of any and all items with items of like kind, nature, quality and if possible cost. This replacement became necessary because we believed that it would be unhealthy to move items which had been located in our home and exposed to mold into the mobile home in which we now reside. Some furnishings and personalty exposed to mold remain in the home which we vacated.

-6-

* * *

10. My wife, Kim Amanns, and I have provided or will provide in a timely fashion photographs and an inventory setting forth the estimated value of any and all furnishings and personalty in our mobile home which was bought to replace mold-contaminated furnishings and personalty in the home we vacated.

On December 5, 2008, Plaintiffs filed a motion seeking to add yet another expert witness/treating physician to their disclosure list. The Trial Court held a hearing on several pending motions and entered an order on December 16, 2008 finding and holding, *inter alia*:

2. With respect t[o] Defendants' Motions for Entry to allow photographing of Plaintiffs' personal property and Defendants' Motion to Compel Discovery, the Court holds that the measure of damages for personal property allegedly lost by Plaintiffs is the difference between the fair cash market value of the property as it was before any damage or loss occurred and the fair cash market value of the property after the loss occurred. The amounts paid by Plaintiffs for replacement property, particularly the furniture purchases from Ethan Allen, are not relevant to determination of Plaintiffs' alleged loss and proof of those expenses will not be allowed. Because Plaintiffs may not introduce evidence of the sums paid for alleged replacement property, Defendants' Motions for Entry into Property and to Compel Discovery are moot, and are, therefore, DENIED.

* * *

5. Plaintiffs' Motion to Supplement Rule 26 Disclosures and add Dr. Alvin Teirstein as an expert witness is DENIED. Consistent with the Court's prior rulings on the subject of additional experts, the time for attempting to add new experts has expired.

On January 5, 2009, Plaintiffs filed a Supplement to Plaintiffs' Rule 26 Disclosures disclosing new opinions given by two of Plaintiffs' expert witnesses and stating: "Both Mr. Daves and Mr. Weekly are available for depositions between now and the deadline for discovery set out by the court to testify in more detail to their opinions and the basis therefore." On January 16, 2009 Grissom and Grissom Heat & Air filed a motion to exclude Plaintiffs' newly disclosed expert opinions and for sanctions.

The Trial Court held a hearing on the motion to exclude expert opinions and for sanctions and entered an order February 13, 2009 finding and holding, *inter alia*:

ORDERS, ADJUDGES, and DECREES that the Defendants' Motion to Exclude Expert Opinions and for Sanctions is GRANTED. Plaintiffs and their experts are hereby prevented and excluded from presenting expert opinions and/or any supporting data not previously formed and disclosed to the Defendants prior to the July 25, 2008 date of this Court's granting of a limited continuance to the Plaintiffs.

This Court further finds that Plaintiffs and their counsel have repeatedly disregarded this Court's orders and directives concerning the conditions of the limited continuance of this matter provided by this Court on or about July 25, 2008. The Plaintiffs have repeatedly filed new disclosures of additional experts and/or expert opinions and have attempted to notice the disclosures of additional experts and/or expert opinions and have attempted to notice the depositions of new fact witnesses, all in contravention of this Court's orders and directives. This Court finds that the Defendants' legal counsel had to spend significant time to respond to the Plaintiffs' several filings. In accordance with the Affidavit of counsel for the Defendants, Jeff Grissom and Grissom Heat & Air, Inc., this Court hereby further

ORDERS, ADJUDGES, and DECREES that the Plaintiffs are hereby sanctioned in the amount of $11,555.00, which the Plaintiffs shall pay to and reimburse the Defendants, Jeff Grissom and Grissom Heat & Air, Inc., c/o their attorney ….

On January 21, 2009, Plaintiffs filed a supplement to their response to the motion for sanctions arising from spoliation ("Supplement"). The Supplement, which was provided in response to Interrogatory 4, had attached to it a voluminous inventory list documenting items of personalty along with the date and place purchased and the cost. The Supplement also had attached more than 150 pages of copies of receipts for purchases some of which date back as far as the early 1990s, and some of which appear to have been charged in Kim Amanns' maiden name. Most of the more than 150 pages show more than one receipt per page. The receipts are for all sorts of personalty including such items as soap and powder purchased from Profitt's in 1996. Also attached to the Supplement were copies of hundreds of photographs of personalty and a voluminous list documenting what items of personalty each of the photos depict along with the cost or value of each item. The more than 375 pages of photographs show, among other things, items of clothing, household furnishings, kitchen supplies, and artwork. The Supplement also had attached an inventory several pages long

-8-

detailing items of personalty for which it was asserted that no photographs or receipts were available along with their place of purchase and an asserted cost and/or value for most of the items. This list included such items, among others, as a washer and dryer; a treadmill; fresh pears, bananas, and plums; ketchup, mustard, and mayonnaise; and frozen vegetables.

Plaintiffs also filed an affidavit of Ty Amanns on January 21, 2009 which states, in pertinent part:

> 2. As I stated in my previous affidavit, my wife and I disposed of mold contaminated items based upon our symptomology and a desire to avoid contamination of our new dwelling. Based upon the advice of David Weekly pertaining to remediation, my wife and I chose to dispose of the majority of the items of personal property, rather than clean them, because cleaning as set forth by the guidelines provided by the Environmental Protection Agency would have been cost prohibitive.

> 3. Additionally, as set forth in my previous affidavit, due to concerns for cross-contamination of our new dwelling, we felt it necessary to dispose of other items.

On February 27, 2009 Plaintiffs filed another affidavit of Ty Amanns which states, in pertinent part:

> 25. As a result of the defendants' motion on spoliation, Mr. Ellis and Mr. Johnson met with Kim and I on or about December 23, 2008. Messrs. Ellis and Johnson made it absolutely clear that we were to search for and attempt to locate anything and everything in our possession that might arguably show what was contained as contents of our house. It was apparent to us at that point that the photographs in the possession of Attorney Holbert [one of Plaintiffs' prior attorneys] had not been physically turned over through Robert Pryor, Jr. to Mr. Ellis. Kim and I spent days looking through our possessions, even going so far as to search through a storage building and, much to our surprise, we were able to locate copies of photographs that had previously been tendered to Ken Holbrook. It was these photographs that we presented to Messrs. Ellis and Johnson on January 14, 2009. They were as shocked and surprised as we were that these photographs existed. Once we showed the photographs to Messrs. Ellis and Johnson, we were immediately told to prepare an inventory, which Kim did, taking her several weeks to complete. It was these photographs and inventory sheets that were attached to the plaintiffs' response to defendants' Interrogatories and Requests for

Production of Documents Propounded [sic] to the Plaintiffs.

\* \* \*

30. Throughout the entire course of the litigation, from the time it was filed in Knox County Chancery Court, through a hearing which went forward on December 5, 2008 before the Honorable Dale C. Workman, we had been advised by our counsel of record and, were under the impression, that the measure of damages for personalty loss was the replacement cost of the personalty and/or furnishings which had been damaged and/or destroyed.

On February 2, 2009, Defendants filed a Joint Motion to Dismiss alleging, in part, that "Defendants have been severely and irreparably harmed and have been unable to prepare a full and complete defense due to the actions of the Plaintiffs and their counsel." In the Joint Motion to Dismiss Defendants raised issues regarding difficulties in inspecting and testing Plaintiffs' real property, difficulties in attempting to depose Ms. Lilly, and Plaintiffs' withholding of evidence with regard to damages.

The Trial Court held a hearing on Defendants' Joint Motion to Dismiss and on March 17, 2009 entered its Final Order of Dismissal With Prejudice finding and holding:

This matter came before this Honorable Court on March 13, 2009 upon the Defendants' Joint Motion to Dismiss; and the Court having reviewed pleadings and other submissions of the parties, having heard the arguments of counsel, and having considered the entire record in this matter, finds that the Defendants' Joint Motion to Dismiss is well-taken and should be granted.

The Court finds that the record is replete with evidence that the Plaintiffs have not and do not intend to comply with the orders and directives of this Court; that the Plaintiffs have engaged in providing multiple misrepresentations to this Court, including misrepresentations in their response to the Defendants' Joint Motion to Dismiss; that the Plaintiffs have failed to participate in discovery in good faith, and have failed to provide the Defendants accurate, timely, and complete discovery; that the Plaintiffs' actions have prevented the Defendants from being able to present a full and complete defense in this matter; that the Plaintiffs' cause of action was first filed in Knox County Chancery Court in 1997 until it was voluntarily dismissed by the Plaintiffs in 2003, and then re-filed by the Plaintiffs in this Court, where it has been pending since 2004; and that this Court has previously admonished the Plaintiffs and has sanctioned the Plaintiffs short of

dismissal in attempts to discourage their improper behavior before this Court, to no avail; wherefore, it is hereby

ORDERED, ADJUDGED, and DECREED that the Plaintiffs' cause of action is DISMISSED with FULL PREJUDICE against the refiling of same; and that costs are hereby taxed to the Plaintiffs, upon whom execution may issue if necessary.

Plaintiffs appeal to this Court.

## Discussion

Although not stated exactly as such, Plaintiffs raise four issues on appeal: 1) whether the Trial Court erred in sanctioning Plaintiffs in the amount of $11,555.00; 2) whether the Trial Court erred in dismissing Plaintiffs' suit; 3) whether Plaintiffs were deprived of due process and their day in court; and, 4) whether the Trial Court erred in determining that one of the Defendants' experts was a consulting expert and ordering that Plaintiffs could not use this expert's report.

We review sanctions imposed by a trial court under Tenn. R. Civ. P. 37 for abuse of discretion. *Lyle v. Exxon Corp.*, 746 S.W.2d 694, 699 (Tenn. 1988). Our Supreme Court discussed the abuse of discretion standard in *Eldridge v. Eldridge*, stating:

Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to [the] propriety of the decision made." A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court.

*Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (citations omitted).

Appellate courts ordinarily permit discretionary decisions to stand when reasonable judicial minds can differ concerning their soundness. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999). A trial court's discretionary decision must take into account applicable law and be consistent with the facts before the court. *Id*. When reviewing a discretionary decision by the trial court, the "appellate courts should begin with the presumption that the decision is correct and should review the evidence in the light most favorable to the decision." *Id*.

-11-

As pertinent to this appeal, Tenn. R. Civ. P. 37 provides:

**37.02.  Failure to Comply with Order.** – If a deponent; a party; an officer, director, or managing agent of a party; or, a person designated under Rule 30.02(6) or 31.01 to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under Rule 37.01 or Rule 35, or if a party fails to obey an order entered under Rule 26.06, the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

* * *

**37.03.  Failure to Disclose or Refusal to Admit.** – (1) A party who without substantial justification fails to supplement or amend responses to discovery requests as required by Rule 26.05 is not permitted, unless such failure is harmless, to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed.  In addition to or in lieu of this sanction, the court on motion may impose other appropriate sanctions.  In addition to requiring payment of reasonable expenses (including attorney fees) caused by the failure, these sanctions may include any of the actions authorized under Rule 37.02(A), (B), and (C) and may include informing the jury of the failure to supplement or amend.

Tenn. R. Civ. P. 37.

Discussing the sanction of default available under Tenn. R. Civ. P. 37.02(C), this Court has noted "that a trial court faced with a party who fails to obey an order to

-12-

provide discovery may render a judgment by default against the disobedient party. Although this sanction is extreme, it is appropriate 'where there has been a clear record of delay or contumacious conduct.'" *Potts v. Mayforth*, 59 S.W.3d 167, 171 (Tenn. Ct. App. 2001) (quoting *Shahrdar v. Global Hous. Inc.*, 983 S.W.2d 230, 236 (Tenn. Ct. App. 1998) (internal citations omitted)). This same sanction is available through Tenn. R. Civ. P. 37.03 if a party fails to properly supplement discovery responses.

We first address whether the Trial Court erred in sanctioning Plaintiffs. In its February 13, 2009 order the Trial Court found and held, *inter alia*:

> that Plaintiffs and their counsel have repeatedly disregarded this Court's orders and directives concerning the conditions of the limited continuance of this matter provided by this Court on or about July 25, 2008. The Plaintiffs have repeatedly filed new disclosures of additional experts and/or expert opinions and have attempted to notice the disclosures of additional experts and/or expert opinions and have attempted to notice the depositions of new fact witnesses, all in contravention of this Court's orders and directives. This Court finds that the Defendants' legal counsel had to spend significant time to respond to the Plaintiffs' several filings.

A careful and thorough review of the record on appeal reveals that the Trial Court had made it clear through its orders that it was granting a continuance but that, in the Trial Court's words: "We won't start all over again." Plaintiffs' counsel acknowledged the Trial Court's direction. Thus, the Trial Court had entered an order setting limitations on discovery pursuant to Tenn. R. Civ. P. 26.06. The Trial Court reiterated and clarified this order in several subsequent orders. Plaintiffs, however, continued to attempt to add new witnesses and, in particular, new expert witnesses. Defendants were forced to file several motions seeking to force Plaintiffs to comply with the Trial Court's order and seeking to exclude the newly disclosed witnesses. On more than one occasion, the Trial Court entered an order disallowing the use of Plaintiffs' newly disclosed experts and expert opinions and reiterating its order. Yet Plaintiffs continued to attempt to add new witnesses. After entering multiple orders addressing these violations, the Trial Court finally decided to sanction Plaintiffs pursuant to Tenn. R. Civ. P. 37 in an attempt to deter them from further violations.

We find no abuse of discretion in the Trial Court's imposition of this sanction because, as the Trial Court so aptly and succinctly stated, Plaintiffs had "repeatedly disregarded this Court's orders and directives concerning the conditions of the limited continuance of this matter provided by this Court on or about July 25, 2008." Certainly, reasonable minds could disagree as to the propriety of the Trial Court's decision to order this sanction, the very essence of a discretionary decision. We will not substitute our judgment

for that of the Trial Court. We affirm the sanctions.

We next address whether the Trial Court erred in dismissing Plaintiffs' suit. Plaintiffs argue, in part, that the Trial Court dismissed their suit even though Plaintiffs engaged in no new contumacious behavior after they were sanctioned for $11,555. Plaintiffs base this assertion, in part, upon the fact that Plaintiffs already had produced the hundreds of pages of photographs and receipts prior to the Trial Court's imposition of sanctions.

However, a careful and thorough review of the record on appeal reveals that the Trial Court based its dismissal on the totality of the circumstances, not just on one instance of behavior. Furthermore, when the Trial Court heard argument on the motion to exclude expert opinions and for sanctions, it heard argument only with regard to Plaintiffs' newly disclosed expert opinions. The Trial Court clearly stated that it did not have before it a motion to dismiss with regard to a failure to fairly participate in discovery. Instead, the Trial Court dealt at that time only with the issue of another violation of the Trial Court's orders with regard to the discovery of witnesses, and the motion for sanctions due to spoliation.

Thus, the issue of Plaintiffs' contumacious behavior with regard to the production of hundreds of pages of photographs after failing to produce these documents when requested and, in fact, representing to the Trial Court that such documents did not exist, was not before the Trial Court at that time. The issue regarding this behavior was brought before the Trial Court when it heard Defendants' Joint Motion to Dismiss.

Furthermore, we note that the extremely voluminous record on appeal reveals patterns of behavior on the part of Plaintiffs which can only be described as contumacious or for purposes of delay. For example, the record reveals that Plaintiffs made misrepresentations to the Trial Court with regard to Ms. Lilly's mental capacity until it became imperative for Ms. Lilly instead to be found competent in order to preserve Ty Amanns' claims. We find Plaintiffs' argument that they never represented to the Trial Court that Ms. Lilly had dementia but instead only that it was "believed" that she did to be, charitably put, unpersuasive. Despite this claimed belief, they also "believed" Ms. Lilly to be competent to execute a new deed on the property from Ms. Lilly to Ty Amanns in response to the motion of Pence and East TN Gas to dismiss his claims as to the alleged damages to the house.

The record on appeal also reveals that Plaintiffs on multiple occasions represented that photographs of the personalty for which they claimed damages had been destroyed up until the Trial Court ruled that they would not be allowed to present evidence of the cost of the replacement items as their measure of damages, and they were facing a

motion for sanctions due to spoliation. The record further reveals that although Plaintiffs claim to have been surprised when they discovered the hundreds of pages of photographs, they were aware that these photographs existed and had not forgotten their existence as shown by the affidavit of Ty Amanns filed on February 27, 2009 which states: "It was apparent to us at that point that the photographs in the possession of Attorney Holbert had not been physically turned over through Robert Pryor, Jr. to Mr. Ellis." The photographs to which Mr. Amanns refers in his affidavit are the photographs which Plaintiffs in their responses to discovery propounded in the Chancery Court suit represented were in the possession of their attorney, who at that time was Attorney Holbert.

There are several important points which must be made with regard to the photographs once in the possession of Attorney Holbert. First and foremost, the photographs in Attorney Holbert's possession were offered in response to discovery propounded in the Chancery Court suit, a wholly separate suit from the instant suit. Although the Circuit Court suit and the Chancery Court suit both involved the same parties and the same facts, they are two separate lawsuits and Plaintiffs' obligations to produce discovery when requested in the Circuit Court suit cannot be satisfied by Plaintiffs' assertion that they produced for viewing such evidence in a totally separate action.

Furthermore, these photographs were offered in response to an interrogatory and request to produce asking specifically about allegations concerning the de-humidification equipment. In that very same discovery response, when asked about other economic damages and requested to produce documentation of same, Plaintiffs answered: "Loss of furniture, fixtures, appliances, equipment, clothing and other personal effects – unknown at this time." Importantly, Plaintiffs did not assert in response to the request for production with regard to the equipment that photographs in their attorney's possession would also satisfy this particular request for production.

We also note that in responses to discovery in the instant suit, Plaintiffs affirmatively represented to their current counsel and to the Trial Court that:

> all receipts, checks or any other paper documentation that were present in the subject home at the time we vacated the premises which would document the cost of the various items contained within the home, were destroyed as they had been contaminated by the mold in the home. It is impossible to estimate the true value of all items of personalty in the home that were discarded. These items would include numerous small items including all bedding, all bath and kitchen towels, all food items, various cooking and eating utensils and all photographs.

Plaintiffs produced, or even attempted to locate, the hundreds of receipts and photographs documenting alleged damages with regard to personalty only after the Trial Court made it clear that Plaintiffs could not use the cost of replacement items as their measure of damages, and Plaintiffs were faced with a motion for sanctions due to spoliation. Yet Plaintiffs admitted in the affidavit of Ty Amanns filed in February of 2009 that they had not forgotten about the existence of these photographs. This is simply another instance of Plaintiffs making misrepresentations or withholding information until it suited their purposes to do otherwise, and demonstrates "a clear record of delay or contumacious conduct." *Potts*, 59 S.W.3d at 171.

The Trial Court considered the totality of the circumstances when it decided to dismiss Plaintiffs' case. At a minimum, reasonable minds could disagree as to the propriety of the Trial Court's decision, the very essence of a discretionary decision. We will not substitute our judgment for that of the Trial Court. We affirm the Trial Court's March 17, 2009 Final Order of Dismissal With Prejudice. Our determination regarding Plaintiffs' first two issues renders the necessity of considering Plaintiffs' remaining issues moot.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the appellants, Ty Amanns and Kim Amanns, and their surety.

_____
D. MICHAEL SWINEY, JUDGE

-16-