# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
December 10, 2012 Session

## FRANCES G. RODGERS, ET AL. v. JOHN ADAM NOLL, III

### Appeal from the Circuit Court for Knox County
### No. 1-525-10      Dale Workman, Judge

### No. E2012-00990-COA-R3-CV-FILED-MARCH 26, 2013

Frances G. Rodgers, as next friend of minors Julia Amber Noll and Joshua Aidan Noll ("Plaintiff") sued John Adam Noll ("Defendant") for the alleged wrongful death of their mother, Lori Bible Noll ("Deceased"). During discovery, Defendant filed multiple motions alleging discovery violations. After a hearing the Trial Court entered its order on April 25, 2012, which, among other things, imposed sanctions for certain discovery violations and then dismissed Plaintiff's case due to discovery violations. Plaintiff appeals to this Court. We find and hold that dismissal was too severe a sanction for the discovery violations found. We reverse the dismissal; remand to the Trial Court for a more appropriate award of sanctions; and affirm the remaining specific sanctions awarded by the Trial Court and the remainder of the Trial Court's April 25, 2012 order.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed, in part; Affirmed, in part; Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J., and JOHN W. MCCLARTY, J., joined.

Bryan E. Delius and Bryce W. McKenzie, Sevierville, Tennessee, and M. Sue White, Seymour, Tennessee, for the appellant, Frances G. Rodgers, as next friend of minors Julia Amber Noll and Joshua Aidan Noll.

Brian H. Trammell and Amy V. Peters, Knoxville, Tennessee, for the appellee, John Adam Noll, III.

# OPINION

## Background

Deceased and Defendant were married and had two minor children. Deceased suffered injuries that led to her death as a result of an incident that occurred in October of 2009. Plaintiff, Deceased's mother, filed this wrongful death suit on behalf of Deceased's minor children against Defendant alleging, among other things, that Defendant had caused or contributed to the death of Deceased.

Discovery commenced and the Trial Court entered a Scheduling Order on November 16, 2011, which ordered, *inter alia*:

> On or before January 20, 2012, the Plaintiffs will provide to the Defendant a final list of all individuals that they intend to call as expert witnesses at the trial of this matter. Plaintiffs will provide a complete disclosure in accordance with Rule 26 of the Tennessee Rules of Civil Procedure.

Plaintiff filed her Rule 26.02 Expert Disclosures on January 20, 2012. Defendant then filed multiple motions relating to discovery including multiple motions for sanctions for alleged discovery abuses. After a hearing the Trial Court entered its order on April 25, 2012 finding and holding, *inter alia*:

> 9. Defendant's motion for sanctions related to Ms. Paulette Sutton's expert disclosures is GRANTED. The Court finds that the disclosure made by the plaintiff of this expert was in violation of Rule 11. The disclosure made by the plaintiff on January 20, 2012, pursuant to this Court's Order was not in keeping with the Tennessee Rules of Civil Procedure because the disclosure was made before the plaintiff ever received any opinions from this expert.
>
> Therefore, as a sanction for that discovery abuse, this Court orders plaintiff['s] counsel to pay to defense counsel: (1) the cost of the travel to Memphis; (2) the cost of transcribing the deposition; (3) defense counsel's reasonable attorney[']s fees for travel time. Counsel for the defendant will file with the Court documentation supporting the financial awards described hereinabove. If plaintiff['s] counsel wants to dispute those charges, the Court will hear that. Otherwise, plaintiff['s] counsel shall pay these costs within thirty (30) days of April 13, 2012.

Additionally, Ms. Sutton will only be able to testify regarding her opinion that the blood-letting injury to Ms. Noll's forehead occurred at the base of the stairs or on the bottom two stairs of the stairwell in the Noll residence.

10. Defendant's motion for sanctions related to Ms. Cassandra Dowd's deposition is GRANTED. The Court finds that the disclosure made by the plaintiff of this expert was in violation of Rule 11. The Court finds that the plaintiff never contacted Ms. Dowd to inquire whether she might have information relevant to this lawsuit prior to naming her as a witness in discovery responses, and the plaintiff refused to remove her from the witness list after defense counsel expressly told plaintiff['s] counsel that the witness had no relevant information. Therefore, as a sanction for that discovery abuse, this Court orders plaintiff['s] counsel to pay to defense counsel the cost of the deposition and defense counsel's reasonable time in traveling to Blount County to take the deposition.

11. Defendant's motion to exclude Dr. George Nichols' testimony under *McDaniel v. CSX Transportation, Inc.*, 955 S.W.2d 257 (Tenn. 1997) is DENIED. The Court finds that Dr. Nichols' opinion regarding the causation of the bruising on the underside of Ms. Noll's left arm is a valid opinion within the field of forensic pathology. Although that opinion is not in and of itself enough to prove Mr. Noll is the cause of those bruises, Dr. Nichols can give that opinion.

12. Defendant's motion for sanctions relating to Dr. George Nichols' expert disclosure is GRANTED. The Court finds that the plaintiff's Rule 26 disclosure of Dr. Nichols' opinions made by the plaintiff on January 20, 2012, pursuant to this Court's Order, was inconsistent with his actual testimony. The disclosure was not complete, accurate, or compliant with Rule 11's requirement that counsel make a reasonable inquiry. With regard to the appropriate sanctions, the Court reserves judgment pending the outcome of the remaining motions.

13. Defendant's motion for sanctions relating to Mr. Arthur Chancellor's expert disclosure is GRANTED. The Court finds that the plaintiff's Rule 26 disclosure of Mr. Chancellor made by the plaintiff on January 20, 2012, pursuant to this Court's Order was inconsistent with his actual testimony. The disclosure was not complete, accurate, or compliant with Rule 11's requirement that counsel make a reasonable inquiry. With

regard to the appropriate sanctions, the Court reserves judgment pending the outcome of the remaining motions.

14. Defendant's motion to exclude Mr. Chancellor's testimony under *McDaniel v. CSX Transportation, Inc.*, 955 S.W.2d 257 (Tenn. 1997) is GRANTED. The Court finds that this witness, with the record before the Court, has no scientific basis to allow him to express his opinion about whether defendant engaged in false reporting. Therefore, Mr. Chancellor is excluded from testifying as an expert witness.

15. Defendant's motion to exclude Ms. Joanna Collins' testimony under *McDaniel v. CSX Transportation, Inc.*, 955 S.W.2d 257 (Tenn. 1997) is GRANTED. The Court finds that this witness, with the record before the Court, has no scientific basis or experience to allow her to express her opinion about whether [defendant] is lying. Therefore, Ms. Collins is excluded from testifying as an expert witness.

16. The Defendant's motion for sanctions related to Ms. April Miller's expert disclosure is DENIED. The Court finds that the Plaintiff was unable to interview Ms. Miller due to intervention from the University of Tennessee Medical Center's legal counsel. Based upon the information contained within the Knox County Sheriff Department's investigation file, the Plaintiff had some basis for disclosing her as a witness. However, the Court does recognize that her disclosure was inconsistent with her deposition testimony. No sanctions are awarded for this witness.

17. The Defendant's motion for sanctions related to the plaintiff's failure to produce the audio recording or a transcript thereof made by witness Dale Gourley on or about October 17, 2009 is GRANTED. Based upon the record as a whole, it appears that plaintiff['s] counsel failed to disclose the audio recording or a transcript thereof in question during written discovery or pursuant to a subpoena *duces tecum* accompanying Mr. Gourley's notice of deposition. However, the Court will allow the plaintiff to supplement the record with regard to this motion if they can produce any documentation verifying that the audio recording or a transcript thereof was produced to defense counsel. With regard to the appropriate sanctions, the Court reserves judgment.

18. Based upon the Court's review of the record as a whole, including all of the deposition transcripts and exhibits that were attached to the above

referenced motions, the Court finds that the plaintiff engaged in repeated abuses of discovery by naming experts they had not received opinions from and filing disclosures that were grossly inconsistent with their experts' actual opinions. Based upon these multiple discovery violations, the Court exercises its discretion to dismiss this suit for abuse of discovery.

Plaintiff appeals the dismissal of the case to this Court.

## Discussion

Although not stated exactly as such, Plaintiff raises three issues on appeal: 1) whether the Trial Court erred in ordering sanctions for discovery violations pursuant to Tenn. R. Civ. P. 11; 2) whether the Trial Court abused its discretion in dismissing Plaintiff's case for discovery violations; and, 3) whether the Trial Court abused its discretion in excluding the testimony of Arthur Chancellor.

We first consider whether the Trial Court erred in ordering sanctions for discovery violations pursuant to Tenn. R. Civ. P. 11. We review a trial court's imposition of sanctions for discovery abuse under an abuse of discretion standard. *Lyle v. Exxon Corp.*, 746 S.W.2d 694, 699 (Tenn. 1988).

As pertinent to this appeal, Tenn. R. Civ. P. 11 provides:

> **11.04. Inapplicability to Discovery.** – Subdivisions 11.01 through 11.03 of this rule do not apply to disclosures and discovery requests, responses, objections, and motions that are subject to the provisions of Rules 26 through 37.

Tenn. R. Civ. P. 11.04.

The Trial Court's April 25, 2012 order awarded sanctions pursuant to Rule 11. Rule 11, however, clearly does not apply to "discovery requests, responses, objections, and motions …." Tenn. R. Civ. P. 11.04. Instead, sanctions for discovery violations fall under the purview of Tenn. R. Civ. P. 37, which provides, in pertinent part:

> **37.02. Failure to Comply with Order.** – If a deponent; a party; an officer, director, or managing agent of a party; or, a person designated under Rule 30.02(6) or 31.01 to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under Rule 37.01 or Rule

-5-

35, or if a party fails to obey an order entered under Rule 26.06, the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering judgment by default against the disobedient party;

(D) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination;

(E) Where a party has failed to comply with an order under Rule 35.01 requiring the party to produce another for examination, such orders as are listed in paragraphs (A), (B), and (C) of this rule, unless the party failing to comply shows that he or she is unable to produce such person for examination.

In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising the party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Tenn. R. Civ. P. 37.02[1].

We note that "if the Trial Judge reached the right result for the wrong reason, there is no reversible error." *Shutt v. Blount*, 249 S.W.2d 904, 907 (Tenn. 1952). We, thus, will consider whether pursuant to Tenn. R. Civ. P. 37 the Trial Court erred in ordering discovery sanctions.

---

[1]Plaintiff argues in her brief on appeal that the Trial Court should have utilized Tenn. R. Civ. P. 37.03. We disagree. Among other things not relevant to the case at hand, Tenn. R. Civ. P. 37.03 deals with a failure to supplement or amend responses. The case now before us involves an alleged failure to comply with the Trial Court's scheduling order entered pursuant to Tenn. R. Civ. P. 26.06. As such, the allegations are properly analyzed under Tenn. R. Civ. P. 37.02, not Tenn. R. Civ. P. 37.03.

This leads us directly into the second issue raised by Plaintiff regarding whether the Trial Court abused its discretion in dismissing Plaintiff's case for discovery violations. We review sanctions imposed by a trial court under Tenn. R. Civ. P. 37 for abuse of discretion. *Amanns v. Grissom*, 333 S.W.3d 90, 98 (Tenn. Ct. App. 2010).

As this Court stated in *Potts v. Mayforth*:

Rule 37.02(C) of the Tennessee Rules of Civil Procedure provides that a trial court faced with a party who fails to obey an order to provide discovery may render a judgment by default against the disobedient party. Although this sanction is extreme, it is appropriate "where there has been a clear record of delay or contumacious conduct." When a trial court exercises its discretion in rendering a default judgment as a sanction, its decision will be disturbed only upon a finding of abuse of that discretion.

*Potts v. Mayforth*, 59 S.W.3d 167, 171 (Tenn. Ct. App. 2001) (quoting *Shahrdar v. Global Housing, Inc.*, 983 S.W.2d 230, 236 (Tenn. Ct. App. 1998)). As this Court noted in *Moody v. Hutchison*: "Dismissal [for the failure to comply with the Tennessee Rules of Civil Procedure or orders of the court] is a harsh sanction, which is generally not favored in circumstances where lesser sanctions are available and where the neglect is more attributable to the attorney than the client." *Moody v. Hutchison*, 247 S.W.3d 187, 198 (Tenn. Ct. App. 2007) (quoting *Kotil v. Hydra-Sports, Inc.*, No. 01-A-01-9305-CV-00200, 1994 Tenn. App. LEXIS 551, **8-9 (Tenn. Ct. App. Oct. 5, 1994), *no appl. perm. appeal filed*).

When ordering the sanction of dismissal, the Trial Court discussed the case of *Amanns v. Grissom*, 333 S.W.3d 90 (Tenn. Ct. App. 2010). Plaintiff argues in her brief on appeal that "[t]he trial court's comparing the instant case to *Amanns* is wholly misguided."

We agree that the case now before us on appeal is distinguishable from *Amanns*. In *Amanns* this Court noted that the plaintiffs themselves had engaged in behaviors that made it clear that they did not intend to comply with the orders of the court. *Id.* at 100-102. The *Amanns* plaintiffs had made misrepresentations to the trial court and had withheld information from both the defendants and the trial court until it suited their purposes to produce said information. *Id.* In *Amanns* we found that the plaintiffs had engaged in behavior "which can only be described as contumacious or for purposes of delay." *Id.* at 100.

The case now before us is distinguishable from *Amanns* largely because of the scope of the behaviors. While the Trial Court in the instant case found discovery violations, these violations do not rise to the level of the ones found in *Amanns*, and cannot be described as contumacious or engaged in for purposes of delay. We also note in the case now before

us that the inappropriate discovery conduct "is more attributable to the attorney than the client." *Moody*, 247 S.W.3d at 198. As such, we hold that dismissal of the case for the discovery violations as found by the Trial Court was too harsh of a sanction.

The record before us, however, does support the Trial Court's findings that discovery violations occurred. As such, the imposition of sanctions other than dismissal for these violations is proper and appropriate.

Specifically, with regard to the expert disclosure of Paulette Sutton, the record reveals that Plaintiff's counsel did not even speak to Ms. Sutton until January 20, 2012, the day that Plaintiff filed her expert disclosure. Ms. Sutton was not provided any materials for review until *after* Plaintiff filed her expert disclosure. As such, the information in Plaintiff's expert disclosure was nothing more than Plaintiff's guess and wish as to what Ms. Sutton's expert opinion would be after she reviewed the case. At the time Plaintiff filed her expert disclosure, she simply had no reasonable belief as to the opinions about which Ms. Sutton was expected to testify.

With regard to Cassandra Dowd, Plaintiff listed Ms. Dowd as a potential witness. Defendant contacted Ms. Dowd and discovered that Ms. Dowd denied knowing both the people and the factual situation involved in this case. Defendant's counsel contacted Plaintiff's counsel with this information, but Plaintiff's counsel refused to remove Ms. Dowd's name as a potential witness. As a result, Defendant deposed Ms. Dowd and she denied under oath knowing both the people and the factual situation involved in this case.

As for Plaintiff's expert disclosure with regard to Dr. George Nichols, the Trial Court found that Plaintiff failed to make a reasonable inquiry as to what Dr. Nichols' opinions were prior to making her disclosure, and, as a result, the disclosure was inconsistent with Dr. Nichols' actual opinions. The Trial Court also found that Plaintiff's disclosure with regard to the expert opinions of Arthur Chancellor were not adequate.

Our review of the Trial Court's order in its entirety shows that the Trial Court's findings with regard to Plaintiff's expert disclosure discovery violations under both the Trial Court's order and Rule 26.02(4) are not based solely upon the fact that the opinions of Plaintiff's various experts did not coincide with the information provided by Plaintiff in her disclosure. Rather, the basis for the Trial Court's finding was that Plaintiff had not undertaken the steps necessary to be able to state the opinions that the various experts were expected to testify to and a summary of the grounds for those opinions. The mere fact that an expert in a deposition or at trial expresses an opinion inconsistent with a party's Rule 26.02(4) expert disclosure does not in and of itself show any violation of Rule 26.02(4). Defendant, in effect, concedes this point in his brief when he notes that his Rule 26.02(4)

-8-

disclosure as to one of his experts, Dr. Cogswell, was inconsistent on one opinion with Dr. Cogswell's deposition testimony. Defendant admits that Dr. Cogswell denied in his discovery deposition having one specific opinion as disclosed in Defendant's Rule 26.02(4) disclosure. Defendant correctly points out that this inconsistency was not a violation of Rule 26.02(4) because it was made in good faith and was reasonably expected to be Dr. Cogswell's opinion.

We affirm the Trial Court's sanctions with regard to Paulette Sutton and Cassandra Dowd. With regard to the remaining discovery violations as found by the Trial Court including those related to Dr. George Nichols, Arthur Chancellor, and the audio recording or a transcript thereof made by witness Dale Gourley on or about October 17, 2009, we remand this case to the Trial Court for imposition of sanctions other than dismissal.

Finally, we consider whether the Trial Court abused its discretion in excluding the testimony of Arthur Chancellor. With regard to this issue the Trial Court specifically found: "The Court finds that this witness, with the record before the Court, has no scientific basis to allow him to express his opinion about whether defendant engaged in false reporting." A careful and thorough review of Mr. Chancellor's deposition testimony reveals that Mr. Chancellor intended to offer only one opinion in regard to this case, i.e., that Defendant falsely reported, or lied, about the events that occurred on the night when Deceased was injured.

As our Supreme Court has instructed:

Questions regarding the qualifications, admissibility, relevancy, and competency of expert testimony are matters left within the broad discretion of the trial court. *See McDaniel*, 955 S.W.2d at 263-64; *State v. Ballard*, 855 S.W.2d 557, 562 (Tenn. 1993). On appellate review, the trial court's ruling shall not be overturned absent a finding that the trial court abused its discretion in admitting or excluding the expert testimony. *Ballard*, 855 S.W.2d at 562. "[A]n appellate court should find an abuse of discretion when it appears that the trial court applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997).

* * *

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), the United States Supreme court held that Federal Rule of Evidence 702 imposes a "gatekeeping" obligation on the

trial court to "ensure that any and all scientific testimony … is not only relevant, but reliable." *Id.* at 589, 113 S. Ct. 2786. Several years later in *McDaniel v. CSX Transportation, Inc.*, 955 S.W.2d 257 (Tenn. 1997), this Court addressed the admissibility of scientific evidence under Tennessee Rules of Evidence 702 and 703[2] and, citing *Daubert*, similarly held that evidence and expert testimony regarding scientific theory must be both relevant and reliable before it could be admitted. *McDaniel*, 955 S.W.2d at 265. We also listed several nonexclusive factors that courts could consider in determining the reliability of scientific expert testimony, including (1) whether the scientific evidence has been tested and the methodology with which it has been tested; (2) whether the evidence has been subjected to peer review or publication; (3) whether a potential rate of error is known; (4) whether the evidence is generally accepted in the scientific community; and (5) whether the expert's research in the field has been conducted independent of litigation. *Id.*

The testimony at issue in this case, however, is not based on scientific theory and methodology, but rather, is based on nonscientific "specialized knowledge," that is, the expert's experience. *See Simmons v. State*, 797 So. 2d 1134, 1151 (Ala. Crim. App. 1999) ("Crime-scene analysis, which involves the gathering and analysis of physical evidence, is generally recognized as a body of specialized knowledge."); *see also United States v. Meeks*, 35 M.J. 64, 68 (C.A.A.F. 1992). The trial court correctly reasoned that such nonscientific testimony must still meet the fundamental requirements of relevance and reliability. Indeed, nothing in the language of Rules 702 and 703 suggests that scientific testimony should be treated any differently than expert opinions based on technical or nonscientific specialized knowledge. "If the mention of scientific knowledge suffices to mandate reliability standards for scientific

---

[2]Tennessee Rule of Evidence 702 provides:

If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise.

Tennessee Rule of Evidence 703 provides:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence. The court shall disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness.

testimony, a fortiori the mention of nonscientific expert knowledge should compel the courts to seek to formulate reliability standards for that type of expert evidence as well." Edward J. Imwinkelreid, *The Next Step After Daubert: Developing a Similarly Epistemological Approach to Ensuring the Reliability of Nonscientific Expert Testimony*, 15 Cardozo L. Rev. 2271, 2281 (1994).

\* \* \*

In resolving the evidentiary issue before us, the United States Supreme Court's recent decision in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999), provides useful guidance. In that case, the Supreme Court was asked to determine whether a trial court "may" consider *Daubert's* factors when determining the admissibility of an engineering expert's testimony based on specialized knowledge. The Court first held that *Daubert's* "gatekeeping obligation," requiring an inquiry into both the relevance and the reliability of the evidence, applies not only to expert testimony characterized as scientific, but to all expert testimony. *See Kumho Tire Co.*, 526 U.S. at 147, 119 S. Ct. 1167. Moreover, the Court concluded that when assessing the reliability of nonscientific expert testimony, the trial court may consider the *Daubert* factors "where they are reasonable measures of the reliability of expert testimony." *Id.* at 152, 119 S. Ct. 1167. However, the Court cautioned that the

> "factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." The conclusion, in our view, is that we can neither rule out, nor rule in, for all cases and for all time the applicability of the factors mentioned in *Daubert*, nor can we now do so for subsets of cases categorized by category of expert or by kind of evidence. Too much depends upon the particular circumstances of the particular case at issue.

*Id.* at 150, 119 S. Ct. 1167 (citations omitted). The Court concluded that the trial court maintains "considerable leeway" in deciding whether to consider the specific factors in *Daubert* "as reasonable measures of the reliability of expert testimony." *Id.* at 152, 119 S. Ct. 1167.

We find this analysis reasonable, and consequently, we reject the defendant's argument that *McDaniel* applies only to scientific testimony. Distinguishing scientific evidence from other areas of expert testimony is too difficult a determination in many instances. Consequently, to restrict *McDaniel* to scientific evidence would be to impose upon the trial court the undue burden of classifying the legions of expert witnesses as scientific or nonscientific. We do not believe that Rule 702 "creates a schematism that segregates expertise by type while mapping certain kinds of questions to certain kinds of experts." *Kumho Tire Co.*, 526 U.S. at 151, 119 S. Ct. 1167. Accordingly, we hold that the *McDaniel* factors *may* apply, subject to the discretion of the trial court, "as reasonable measures of the reliability" of all expert testimony described in Rule 702.

In properly exercising its discretion, the trial court must first make a determination that the witness is qualified by knowledge, skill, experience, training, or education to express an opinion within the limits of the expert's expertise. Tenn. R. Evid. 702. The determinative factor is whether the witness's qualifications authorize him or her to give an informed opinion *on the subject at issue. See, e.g., United States v. Starzecpyzel*, 880 F. Supp. 1027, 1043 (S.D.N.Y. 1995) (presenting as an example of unreliable and inadmissible evidence the testimony of a weekend recreational sailor professing expertise as a harbor pilot); *see also Wilson v. Woods*, 163 F.3d 935, 937-38 (5th Cir. 1999) (finding an expert in fire reconstruction unqualified as an expert in auto accident reconstruction).

The trial court must next ensure that the basis for the witness's opinion, *i.e.*, testing, research, studies, or experience-based observations, adequately supports that expert's conclusions. For example, in *General Electric Co. v. Joiner*, 522 U.S. 136, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997), Joiner, an electrician diagnosed with small-cell lung cancer, introduced expert testimony to demonstrate that his workplace exposure to certain chemicals and other toxins contributed to his disease. The experts, in giving their opinions, cited to several studies that were either so dissimilar to the facts of the case or failed to make the requisite link between cancer and chemical exposure. The Supreme Court held that the studies relied on were an insufficient basis for the expert opinions and, therefore, the testimony was inadmissible. In so holding, the Court said,

> [N]othing in either *Daubert* or the Federal Rules of
> Evidence requires a district court to admit opinion evidence

which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.

*Id.* at 146, 118 S. Ct. 512.

This "connection" between the expert's conclusion and the underlying data supporting that conclusion is of especial importance when determining the reliability of experience-based testimony, because observations and experiences are not easily verifiable by the court. However, the court may make a finding of reliability if the expert's conclusions are sufficiently straightforward and supported by a "rational explanation which reasonable [persons] could accept as more correct than not correct." *Wood v. Stihl*, 705 F.2d 1101, 1107-08 (9th Cir. 1983).[3]

Consequently, when the expert's reliability is challenged, the court may consider the following nondefinitive factors: (1) the *McDaniel* factors, when they are reasonable measures of the reliability of expert testimony; (2) the expert's qualifications for testifying on the subject at issue; and (3) the straightforward connection between the expert's knowledge and the basis for the opinion such that no "analytical gap" exists between the data and the opinion offered. Subject to the trial court's discretion, once the evidence is

---

[3]The following well-known hypothetical demonstrates our point:

[I]f one wanted to prove that bumblebees always take off into the wind, a beekeeper with no scientific training at all would be an acceptable expert witness *if* a proper foundation were laid for his conclusions. The foundation would not relate to his formal training, but to his firsthand observations. In other words, the beekeeper does not know any more about flight principles than the jurors, but he has seen a lot more bumblebees than they have.

*Berry v. City of Detroit*, 25 F.3d 1342, 1350 (6th Cir. 1994) (emphasis in original). The basis for the beekeeper's opinion is his experience observing bees. In determining whether this expert's testimony is reliable, the trial court can look at the connection between the beekeeper's observations and his conclusions extrapolated from these observations. The conclusions should be sufficiently straightforward to assist the jury's understanding of the take-off habits of bees. "The straightforward character of the testimony is essential to its reliability because it permits the jury to understand, and thus weigh, the beekeeper's conclusion without the necessity of an explanation of the scientific principles that account for bees always taking off into the wind." J. Brook Lathram, *The "Same Intellectual Rigor" Test Provides an Effective Method for Determining the Reliability of All Expert Testimony, Without Regard to Whether the Testimony Comprises "Scientific Knowledge" or "Technical or Other Specialized Knowledge"*, 28 U. Mem. L. Rev. 1053, 1066-67 (1998).

admitted, "it will thereafter be tested with the crucible of vigorous cross-examination and countervailing proof." *McDaniel*, 955 S.W.2d at 265.

*State v. Stevens*, 78 S.W.3d 817, 832-35 (Tenn. 2002) (footnotes in original but renumbered). The Court in *State v. Stevens* ultimately upheld the trial court's decision to refuse to admit the expert opinion in question and stated: "Although we do not doubt the usefulness of behavioral analysis to assist law enforcement officials in their criminal investigations, we cannot allow an individual's guilt or innocence to be determined by such 'opinion evidence connected to existing data only by the *ipse dixit*' of the expert." *Id.* at 835 (footnote omitted).

Turning to the case now before us on appeal, Mr. Chancellor based his opinion not on scientific theory and methodology but instead on his approximately 38 years of experience in law enforcement. Mr. Chancellor testified that he reviewed depositions, photographs, statements, and other materials, and when asked what specifically he used from this case to form his opinion, he stated that there was no single thing, but rather a totality of the circumstances which led him to form his opinion. Mr. Chancellor also stated that he had done an informal survey asking married women he knew if it were believable that Deceased would have wanted to have sex after coming home at 8 p.m. from working all day and finding that her husband had laid out lingerie and requested that she take a bath. Mr. Chancellor stated that he had "yet to find any woman alive - - or any woman so far that says oh, yeah, that happens all the time." After carefully reviewing Mr. Chancellor's deposition testimony, we find that Mr. Chancellor's expert opinion, like the expert opinion at issue in *State v. Stevens*, was "connected to existing data only by the *ipse dixit* of the expert." *Id.*

Furthermore, Mr. Chancellor's opinion that Defendant had falsely reported or lied about the events of the night in question is simply not "scientific, technical, or other specialized knowledge [that] will substantially assist the trier of fact to understand the evidence or to determine a fact in issue …." Tenn. R. Evid. 702. Rather, Mr. Chancellor's only opinion, that Defendant lied, properly is the province of the trier of fact. We find no abuse of discretion in the Trial Court's decision to exclude the expert testimony of Mr. Chancellor.

We reverse the dismissal of this case and remand to the Trial Court for imposition of additional sanctions other than dismissal for the discovery violations as found by the Trial Court and as discussed more fully above. We affirm the remainder of the Trial Court's April 25, 2012 order.

## **Conclusion**

The judgment of the Trial Court dismissing this case is reversed. The remainder of the judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for an award of sanctions in accordance with this Opinion and for collection of the costs below. The costs on appeal are assessed one-half against the appellant, Frances G. Rodgers and her surety; and one-half against the appellee, John Adam Noll, III.

_____
D. MICHAEL SWINEY, JUDGE